[Civ. No. 29755. First Dist., Div. Two. Nov. 21, 1972.]

A. J. RAISCH PAVING COMPANY, Plaintiff and Respondent, v. MOUNTAIN VIEW SAVINGS AND LOAN ASSOCIATION, Defendant and Appellant.

## COUNSEL

Atkinson, Farasyn & Smith and L. M. Farasyn for Defendant and Appellant.

Ruffo, Ferrari & McNeil and Mark Franich for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—Defendant, Mountain View Savings and Loan Association (Savings and Loan), appeals a judgment after a court trial foreclosing a mechanic's lien of plaintiff, A. J. Raisch Paving Company (Raisch) on tentative subdivision Tract 2634 owned by Savings and Loan in the City of Newark (City), in the amount of $16,068.15, with interest at 7 percent, together with costs of suit. Savings and Loan contends that the claim of lien was not timely filed and even if so, the costs of the sewer on Robertson Avenue, that also benefited completed subdivision Tract 2633, must be apportioned. For the reasons set forth below, we have concluded that the lien was timely filed but the cost of the Robertson Avenue sewer must be apportioned between Tract 2634 and Tract 2633.

The undisputed material facts are as follows: On May 12, 1964, the original owner, Donald L. Stone Homes, Inc. (Stone), had filed with the City a tentative subdivision map for Tract 2634, which had been approved by the City planning commission pursuant to City Ordinance No. 62.[1] The one-year period for filing a final subdivision map, which commenced May 12, 1964, was subsequently extended by the planning commission for one year commencing May 12, 1965.

Stone, on November 25, 1964, contracted with Raisch to install certain "street paving, curbs, gutters, sidewalks, drive approaches, sanitary and storm sewers, water lines, street trees, monuments, barricades, street signs and lot grading" in Tract 2634. The contract provided that "All work is to be done in accordance with the plans and specifications and to the satisfac-

---

[1] Article IV, section 6, of Ordinance No. 62, is entitled "AGREEMENT BETWEEN CITY AND SUBDIVIDER FOR IMPROVEMENT OF STREETS AND EASEMENTS: Bond and Insurance Required." It provides that the subdivider shall enter into an agreement for the improvement of streets, highways, public ways and easements, and sets forth the bonding and insurance requirements for the protection of the City of Newark. Article IV, section 8 of said ordinance provides: "The subdivider must also agree in the contract referred to in Section 6 of this Article to maintain the improvements for a period of one year from the date of acceptance of the improvements by the City Council."

tion and acceptance of the Superintendent of Streets and/or the City Engineer for the City of Newark."

Subsequent to the date of its contract with Stone, Raisch entered into a subcontract with W. H. Ebert Corporation-Spartan Construction Corporation (Ebert) on February 25, 1965, pursuant to which Ebert agreed to install sanitary sewers for the tract. Raisch commenced work on the tract pursuant to its contract subsequent to November 25, 1964. The last work performed by Raisch was on September 13, 1965, at which time, Raisch had completed a $10,000 portion of the lot and site grading. As of September 13, 1965, Ebert had already completed its sewer installations and had billed Raisch accordingly. Ebert included in his bill to Raisch the sewer line installed on Robertson Avenue, a public street, pursuant to Newark City final and recorded map for the adjacent Tract 2633 that Stone then also owned. The sewer lines installed in Robertson Avenue were also intended for the purpose of servicing tentative Tract 2634 at such time as it was, in fact, subdivided and developed. This Robertson Avenue sewer line was accepted by the Union Sanitary District and Tract 2633 was accepted and approved by the City of Newark. No lien was filed against Tract 2633 within the time prescribed by former Code of Civil Procedure sections 1193.1, subdivision (d), and 1193.1, subdivision (e).[2]

No permits for work to be performed in Tract 2634 were obtained nor was the tentative map approved by the planning commission ever submitted to the City council for final approval nor were the requirements prior to recordation of a final map, as called for in the Subdivision Map Act and the ordinances of the City of Newark, ever carried out by either Stone or Raisch.

Raisch billed Stone for the work completed, in the amount of $16,068.15, comprised of $10,000 for the work performed by Raisch, and of $6,068.15 for the sewer work performed by Ebert. This bill was never paid. Following the last work performed by Raisch under its contract with Stone, Savings and Loan recorded on January 12, 1966, a grant deed purporting to give it title to Tract 2634. In fact, the testimony shows that the grant deed to Savings and Loan merely created a security interest subject to vesting of both legal and equitable title if Stone failed to meet his financial commitments on or before June 30, 1966.

[2]Former Code of Civil Procedure section 1193.1 is now Civil Code sections 3093, 3097, 3115-3118. The Code of Civil Procedure sections dealing with liens of mechanics and others upon real property were repealed in 1969 and incorporated into the Civil Code, operative January 1, 1971 (Stats. 1969, ch. 1362, § 2). However, the former statute applies to the instant case.

On December 29, 1966, Raisch served upon Savings and Loan a written notice in accordance with section 1193 of the Code of Civil Procedure. Notice of claim of lien was filed on February 8, 1967, and suit was filed upon the claim of lien on May 2, 1967. At the trial, the court found for Raisch and against Savings and Loan.

Savings and Loan first contends that Raisch's claim of lien was not timely filed under the requirements of former section 1193.1, subdivision (d), of the Code of Civil Procedure which provided that in case of cessation of labor for a continuous period of 60 days, the claim of lien must be recorded within 90 days from the expiration of such 60-day period. Raisch argues that its claim of lien comes within the exception to 1193.1, subdivision (d), set forth in subdivision (e), as follows: "If the work of the improvement is *subject to acceptance by any public or governmental authority,* the completion of such work of improvement shall be deemed to be the date of such acceptance" (italics added). The crucial question is whether or not the work of improvement performed by Raisch was *"subject to acceptance by any public or governmental authority."* If so, the claim of lien was timely filed as the improvement was never, in fact, accepted by the City and thus never completed.

Raisch properly relies on the case of *Howard A. Deason & Co.* v. *Costa Tierra Ltd.,* 2 Cal.App.3d 742 [83 Cal.Rptr. 105], that authoritatively defines *"subject to acceptance"* in section 1193.1, subdivision (e). In *Deason,* as in this case, the primary issue was whether the evidence sustained the finding that the project was *subject to acceptance* by public or governmental authority. The court stated at page 751: "We hold that the phrase 'subject to acceptance' as set forth in section 1193.1, subdivision (e) is not to be equated with inspection and approval or the issuance of certificates of occupancy under building regulations, but must find its base in *some legislative enactment by the public authority"* (italics added). The court then proceeded to find that since the contract for the installation of streets, curbs and gutters was *by city ordinance made subject to acceptance* through the issuance of a certificate by the city engineer and there was no evidence that the city had actually ever accepted the work of improvment, it had never been completed as provided in section 1193.1, subdivision (e), and plaintiff's claim of lien thereon was timely filed. *Southwest Paving Co.* v. *Stone Hills,* 206 Cal.App.2d 548 [24 Cal.Rptr. 48], holds to the same effect in relation to a subcontractor's lien.[3]

---

[3]The question in the *Southwest Paving Co.* case was whether a subcontractor who had performed a work of improvement, which work *was subject to acceptance by the City of Los Angeles,* was required to file a lien within 150 days of completion of

■ Savings and Loan argues that the subdivision work was not "subject to acceptance" because the tentative subdivision map had not been submitted to the City council for final approval nor had the permits been obtained nor the requirements prior to recordation of final map, as called for by the Subdivision Map Act and City Ordinance 62, been performed. We see no merit in this contention. As noted in *Deason,* the question of whether a project is "subject to acceptance" does not depend on whether the contractor had complied with all requirements necessary to approval and acceptance of the project, nor upon acceptance itself, but rather on whether the improvement was *required to be accepted by a public authority pursuant to a legislative act.* Newark City Ordinance 62, quoted above in footnote 1, clearly calls for acceptance of the improvement by the City council and thus meets the requirements enunciated in *Deason* and *Southwest Paving* for the application of Code of Civil Procedure section 1193.1, subdivision (e). We conclude that plaintiff Raisch's lien was timely filed.

However, although we have found that Raisch has a valid lien on Tract 2634, we must conclude that this lien right cannot also include the total cost for the installation of the sewer on Robertson Avenue. As indicated above, the uncontroverted evidence indicated that the $6,068.15 bill submitted to Raisch by Ebert, the sewer subcontractor, included the cost of installing a sewer on Robertson Avenue pursuant to Newark final and recorded map for the adjacent Tract 2633 that at the time (1965) was also owned by Stone, the original owner of Tract 2634. Raisch stipulated that the Robertson Avenue sewer line was also intended for the purpose of servicing tentative Tract 2634. Subsequently, the Robertson Avenue sewer line was accepted by the Union Sanitary District and Tract 2633 was accepted and approved by the City of Newark[4] and no lien was filed against Tract 2633 within the time prescribed by former Code of Civil Procedure section 1193.1, subdivisions (d) and (e).

Raisch was entitled to a claim of lien for the work performed under its contract by virtue of section 1184.1 of the Code of Civil Procedure, which provides: "Any person who, at the instance or request of the owner . . . of any lot or *tract of land,* grades, fills in, or otherwise improves the same, . . . has a lien upon said lot or *tract of land* for his work done and ma-

his work (under Code Civ. Proc., § 1193.1, subd. (c)), or within 150 days of cessation of labor (under Code Civ. Proc., § 1193.1, subd. (g)), or, whether the time for filing a claim of lien commenced on the date of acceptance by the city under Code of Civil Procedure section 1193.1, subdivision (e). The court found section 1193.1, subdivision (e) to be the applicable provision.

[4]Savings and Loan argues that the lateral sewer on Birch Street must also be apportioned, but the record indicates that Birch Street was not reflected on the subdivision map for Tract 2633.

terials furnished" (italics added). The right to a lien thus conferred is distinct from but similar to that conferred by former section 1181 of the Code of Civil Procedure which provides that all persons performing labor upon or furnishing materials to be used in the construction, alteration, addition to or repair of any building, structure or other work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials. As these liens are the creatures of statute the objects thereof are limited to those designated by the statute (*Davis* v. *MacDonough,* 109 Cal. 547, 550-551 [42 P. 450]). ■ Thus, a lien under section 1181 may not be claimed upon a part of a structure as distinct from the whole structure (*Bringham* v. *Knox,* 127 Cal. 40, 43 [59 P. 198]; *Williams* v. *Mountaineer Gold Min. Co.,* 102 Cal. 134, 139-142 [34 P. 702, 36 P. 388]; *Willamette Steam Mills Co.* v. *Kremer,* 94 Cal. 205, 210, 211 [29 P. 633]; *Cox* v. *Western Pac. R.R. Co.,* 47 Cal. 87, 89; *Cox* v. *Western Pac. R.R. Co.,* 44 Cal. 18, 28). By analogy, the object of the lien conferred by section 1184.1 is the "tract of land" graded or otherwise improved; is the entire tract; and is not a part of the tract (*Warren* v. *Hopkins,* 110 Cal. 506 [42 P. 986]). The right of a contractor to claim a lien upon an entire tract may be limited by his waiver of the lien upon a portion of the tract (*B. & J. Constr. Co.* v. *Spacious Homes, Inc.,* 204 Cal.App.2d 216, 222 [22 Cal.Rptr. 41]). The application of equitable principles dictates such a result. ■ Proceedings for the foreclosure of a mechanic's lien are proceedings in equity in which the court will apply equitable principles (*Laubisch* v. *Roberdo,* 43 Cal.2d 702, 709 [277 P.2d 9]; *Hendrickson* v. *Bertelson,* 1 Cal.2d 430, 434 [35 P.2d 318]; *Curnow* v. *Happy Valley Blue Gravel etc. Co.,* 68 Cal. 262, 264 [9 P. 149]; *A. A. Baxter Corp.* v. *Home Owners & Lenders,* 7 Cal.App.3d 725, 732 [86 Cal.Rptr. 854]).

In *A. A. Baxter* v. *Home Owners, supra,* the plaintiff grading and excavating contractor, agreed with the owner to provide the street improvements for three separate units of a subdivision. The work was done under a special permit issued by the city and prior to the filing and approving of the subdivision map. After the work was completed, no mechanic's lien was filed and the contractor (who had a financial interest in the subdivision) agreed that none would be filed to avoid financing problems but that he would have the right to do so after the final subdivision was accepted. The street work was completed and accepted by the city engineer. The city eventually accepted the first two units of the subdivision and more than 90 days later, the contractor filed a mechanic's lien against the third unit of the subdivision. The court denied foreclosure of the plaintiff's mechanic's lien against the third unit of the subdivision and indicated that he had waived his rights as to the first two units by failure to file lien claims against the units. The court noted that inasmuch as the work was performed pur-

suant to a special permit and was accepted by the city engineer and the city, and the contractor failed to file his claim of lien within 90 days of the acceptance, any later claim was tardy and, therefore, ineffective.

The court's reasoning that a contractor's right to claim of lien on an entire tract may be limited by waiver of the lien on a portion of the tract is particularly apt here where Raisch waived his lien rights against the completed Tract 2633 and attempted to impose the entire $6,068.15 of the sewer costs against Tract 2634. Thus, the evidence supports a judgment decreeing foreclosure on an apportionment basis.

Accordingly, the judgment must be modified with directions to the trial court to apportion the total amount of the sewer work on Robertson Avenue between Tract 2633 and Tract 2634 (*Hendrickson* v. *Bertelson, supra,* at p. 434) and allocate to the total amount of the subject lien only the cost of the sewer work constructed for the benefit of Tract 2634. If the present record is insufficient for this determination, or. the parties cannot agree thereto, the court may want to hear additional evidence on this matter only.

The judgment is modified as indicated above, and as so modified, affirmed; each party to bear its own costs on appeal (Cal. Rules of Court, rule 26(b)).

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied December 21, 1972.